T.C. Summary Opinion 2010-118

UNITED STATES TAX COURT

JOHN THOMAS BAYSE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22322-09S.                    Filed August 17, 2010.

John Thomas Bayse, pro se.

<u>Katherine Lee Kosar</u>, for respondent.

JACOBS, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and
this opinion shall not be treated as precedent for any other
case.

Respondent determined a deficiency of $7,326 for 2006.  The issue for decision concerns the characterization of amounts petitioner received from the City of Cleveland, Ohio, in 2006, i.e., whether such amounts constitute taxable income, as respondent maintains, or represent amounts received under a worker's compensation act within the meaning of section 104(a)(1), as petitioner asserts.

All section references are to the Internal Revenue Code (Code) in effect for 2006.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioner resided in Ohio when he filed the petition.

Petitioner began working as a firefighter with the City of Cleveland, Ohio, in May 1989.  On January 19, 2005, he was injured in the line of duty while responding to an automobile accident.  For purposes of his firefighting duties, petitioner was deemed to have suffered a "hazardous duty injury".  From the day of the accident through his retirement from the fire department in December 2006 (with the exception of 2 days when he attempted to work in 2005), petitioner was on hazardous duty injury status and was paid pursuant to the terms of a collective

bargaining agreement (CBA) between the City of Cleveland and Cleveland Fire Fighters, Local 93 (the union).

Article VIII, paragraphs i and j, of the CBA provides terms for hazardous duty injury status pay.  Paragraph i provides:

> An employee who suffers a compensable injury on the job shall be paid at the straight time base rate for any absence from work during his regular shift on the day of the injury that is authorized in writing by the Safety Division Medical Officer.

Paragraph j provides that a firefighter who qualifies for hazardous duty injury status will continue to be paid by the City of Cleveland as if he were still on duty, although he may not accrue additional sick and vacation days while on hazardous duty injury status.  If a firefighter is on hazardous duty injury status for 2 years, the "employee shall apply for a permanent disability retirement pension under the laws of Ohio or return to normal duty with the Department."

For injuries that are not classified as hazardous duty injuries, paragraph j of the CBA provides:

> Injuries which are incurred by Fire Fighters while they are engaged in supportive duties or work which is incidental to active fire fighter duty are compensable through the Ohio Bureau of Workers' Compensation.

Thus, if a firefighter sustains a hazardous duty injury, payment for the first 2 years is made by the City of Cleveland as if the firefighter were still on duty, whereas if the injury is sustained while engaged in supportive or incidental duties, payment is made from the Ohio Worker's Compensation system.  Both

parties agreed that petitioner's injuries were not support duty or incidental duty injuries.[1]

Pursuant to the terms of the CBA, petitioner applied for and was granted a disability retirement pension, effective January 1, 2007.

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for 2006. On the return, petitioner reported gross wages of $5,611.71 earned from Rural Metro Corporation, interest income of $249.60, and a State tax refund of $1,824. The total income reported for 2006 was $7,685.31. Petitioner attached Form W-2, Wage and Tax Statement, received from Rural Metro Corporation reflecting Federal tax withholding of $526.79. Also attached to petitioner's 2006 return was a Form W-2 from the City of Cleveland listing wages of $43,816.28, Federal tax withholding of $5,102.05, State tax withholding of $1,521.37, and city tax withholding of $974.18. Petitioner did not include the amounts paid to him by the City of Cleveland on his 2006 tax return.

Petitioner reported total tax withholding of $5,628.84 (the combined withholding from Rural Metro Corporation and the City of

---

[1]Support duty is duty auxiliary or ancillary to active firefighting. Thus, an injury that occurred due to an accident at the fire station while doing routine work would be considered an injury while engaged in supportive duties. The record does not contain a definition or example of an incidental duty injury.

Cleveland), no Federal tax due, and claimed a refund for the entire amount ($5,628.84) of Federal taxes withheld.

By letter dated July 23, 2007, the City of Cleveland advised petitioner that he was "on the sick list due to an 'On Duty' Injury in 2005". The letter further provided "Pursuant to the contractual agreement, [Mr. Bayse] suffered no loss of accumulated sick time or wages from the City of Cleveland" during the period from January 1, 2006, through December 17, 2006.

Following an audit of petitioner's 2006 Federal income tax return, on August 21, 2009, respondent mailed petitioner a notice of deficiency for 2006, which stated:

> It is determined that the income received from the City of Cleveland must be included in gross income because it does not constitute an amount received under a workmen's compensation act as compensation for personal injuries or sickness within the meaning of I.R.C. Section 104(a)(1). Taxable income is therefore increased by $43,816.28.[2]

---

[2]Respondent mistakenly issued petitioner a notice of intent to levy with respect to the payments made to him by the City of Cleveland. After a collection due process hearing, where respondent upheld the proposed levy, petitioner petitioned this Court (docket No. 29604-08S), challenging respondent's collection activities. Before trial, respondent agreed to abate the assessment.

By order of dismissal entered Sept. 29, 2009, we determined that the case was moot and ordered respondent to pay petitioner's filing fee and postage costs. On Jan. 20, 2010, respondent mailed petitioner a check for $65.90 to reimburse him for his costs. On or about Apr. 2, 2010, respondent generated a credit transfer reversal of $1,993.94, plus interest, with respect to an offset of petitioner's withholding for 2007. Petitioner advised respondent that these funds were paid directly to the State of Ohio as a result of its determination that petitioner understated

(continued...)

## Discussion

Gross income includes all income from whatever source derived unless excludable by a specific provision of the Code. Sec. 61(a). One type of exclusion is section 104(a)(1) for "amounts received under workmen's compensation acts as compensation for personal injuries or sickness". Section 1.104-1(b), Income Tax Regs., provides that section 104(a)(1) excludes amounts received under a worker's compensation act "or under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment." See also sec. 31.3121(a)(2)-1(d), Employment Tax Regs. This exclusion has been strictly construed to conform to the general rule that all income is taxable unless specifically excluded. See Kane v. United States, 43 F.3d 1446, 1449 (Fed. Cir. 1994); Baldwin v. Commissioner, T.C. Memo. 2000-306.

Respondent contends that the amounts petitioner received from the City of Cleveland in 2006 were not made under a worker's compensation act (or pursuant to a legislative act in the nature of a worker's compensation act) as required in section 104(a)(1) and thus are not excluded from petitioner's gross income. Respondent maintains that the CBA entered into between the City

---

[2](...continued)
his wage income for 2006. Subsequently, respondent issued the notice of deficiency which gave rise to the instant matter.

of Cleveland and the union was a labor contract which does not rise to the force and effect of law.

Petitioner contends that because the CBA was signed by the mayor on behalf of the City of Cleveland, the CBA is equivalent to a city ordinance and therefore qualifies as a statute in the nature of a worker's compensation act.

Where administrative rules or regulations have "the force and effect of law", they are considered to be the equivalent of a statute for purposes of section 1.104-1(b), Income Tax Regs. Dyer v. Commissioner, 71 T.C. 560, 562 (1979).  However, a collective bargaining agreement, in general, will not meet the "force and effect of law" requirement.  As explained in Rutter v. Commissioner, 760 F.2d 466, 468 (2d Cir. 1985), affg. T.C. Memo. 1984-525:

> A regulation, like a statute, is a rule of general applicability promulgated by a public agency to govern conduct within the agency's jurisdiction.  A labor contract, unlike a statute, is an agreement between union and employer, modifiable at any time.  That * * * [a] labor contract involved a public employer is irrelevant to the legislative purposes behind the workmen's compensation exclusion, and does not convert the contract into a "statute".  * * *

Thus, when the language of a collective bargaining agreement is by legislative act incorporated by reference or otherwise into a municipal code, and by this measure is enacted into law, it meets the statutory and regulatory requirements described supra. Cf. Givens v. Commissioner, 90 T.C. 1145, 1149-1151 (1988).

Otherwise, it is not considered to have the force and effect of law. Mere approval by the mayor or the city council of a collective bargaining agreement negotiated by a city and a union does not, without explicit incorporation into the city's code, meet the requirements described supra. See Rutter v. Commissioner, supra at 468; Brooks v. Commissioner, T.C. Memo. 1997-568.

Rev. Rul. 81-47, 1981-1 C.B. 55, involves the taxation of payments made by a governmental entity to disabled county safety officials (e.g., firefighters and police officers) pursuant to the terms of a collective bargaining agreement. The ruling held the payments to be excluded from gross income under section 104(a)(1). The collective bargaining agreement involved had been entered into pursuant to a county statute. The county statute provided that all collective bargaining agreements entered into by the county had to be approved by "legislative acts" of the county council and incorporated by reference in the county code. The ruling stated the county council's adoption of the collective bargaining agreement had the effect of enacting and incorporating the provisions of the collective bargaining agreement into the county code.

In the situation herein, the CBA was signed by the Mayor of Cleveland, Frank R. Jackson. The record does not indicate whether the CBA was ratified by the Cleveland City council. Even

assuming arguendo that the CBA was ratified by the Cleveland City council, there was no showing that the CBA was incorporated by reference or otherwise into the Cleveland City code or charter. Hence, the facts in Rev. Rul. 81-47, supra, are distinguishable from those herein.

The facts in Rev. Rul. 83-77, 1983-1 C.B. 37, are similar to those herein. That ruling involved a New York City police officer who was injured in the line of duty and was determined to be unable to perform regular police duties as a result of his injury. The police officer was ordered to remain off duty indefinitely. Under the terms of the collective bargaining agreement negotiated by the union and the City of New York, a police officer was entitled to leave with pay for the full period of his incapacity due to any illness, injury, or mental or physical defect, whether or not incurred in the line of duty. The collective bargaining agreement was consistent with a section of the New York City administrative code which permits payments of salary while a police officer was absent because of sickness or injury, whether or not service connected. The ruling gave two reasons why the payments to the police officer were not excludable from his gross income. First, and most relevant to the instant matter, the ruling stated that the union contract did not qualify as a statute inasmuch as it was not incorporated by reference or otherwise into the New York City code. And second,

since the contract also applied to non-work-related injuries or illness, the ruling held that payments under the contract were not in the nature of worker's compensation.

This Court used reasoning in Brooks v. Commissioner, supra, similar to that used in Rev. Rul. 83-77, supra, in determining that amounts paid pursuant to the terms of the collective bargaining agreement between a union and the City of Cranston, Rhode Island, to two police officers who retired due to job related disabilities were not excludable from gross income.  We therein held that the collective bargaining agreement was not in the nature of a worker's compensation statute.  Unlike the situation in Rev. Rul 81-47, supra, we found that the police officers failed to show that the collective bargaining agreement was adopted by a legislative act of the city council or incorporated into the city's code, ordinances, or charter.[3]  See also Rutter v. Commissioner, supra.

In the case at bar, the CBA between the union and the City of Cleveland was not incorporated by reference or otherwise into legislation.  The record shows only that it was signed by the Mayor of Cleveland, although presumably it was ratified by the Cleveland City council.  But even ratification by the Cleveland

---

[3]We also held that because the police officers could receive payments for non-work-related injuries under the collective bargaining agreement, the payments were not in the nature of worker's compensation.

City council does not convert the CBA into legislation because (1) the CBA was modifiable under the terms of Article XXX of the CBA, and (2) unlike the county statute in Rev. Rul. 81-47, supra, there was no showing that the State of Ohio had a statute that required the CBA to be incorporated into the Cleveland City code or charter.  See Rutter v. Commissioner, 760 F.2d at 468 (labor contract does not qualify as a "statute" within the meaning of section 1.104-1(b), Income Tax Regs.); Covert v. Commissioner, T.C. Memo. 1990-598.  Accordingly, we hold that petitioner did not receive disability payments under a worker's compensation act or a statute in the nature of a worker's compensation act.  Thus, the payments petitioner received in 2006 while on hazardous duty injury status must be included in his gross income.

To reflect the foregoing,

Decision will be entered for respondent.